Harper, Ch.
delivered the opinion of the Court.
I think there is a misconception in supposing this a case in which a hill will lie for the specific delivery of a slave. The general principle on which such a hill may be sustained, as determined by the cases of Sartor vs. Gordon, Trapier vs. *342 Glover and Young vs. Burton, rests on these grounds: that when an owner has had possession of a slave, and has been deprived of it by the act of another, the general presumption is, that there may be some qualities in the slave which would render hint of more value to the owner than could be compensated by the price of such a slave, estimated at his mere market value. So. where a party contracts for the purchase of specific slaves, it is presumed that he may have made his contract with a view to some particular qualities in the slaves themselves, for which ordinary damages would not be a sufficient compensation. Or, as in Trapier vs. Glover, when one is entitled to slaves, by the gift or limitation of a friend, relation, or ancestor, there is very sufficient reason why he should have the slaves themselves, instead of any damages for their estimated value. A general expression is used in one of the cases, that where a party states a defendant to be in possession of his slave, he states a case entitling him, prima facie, to the interferance of this Court. And so it is, but it must be taken with the qualifications which I have suggested, from the context of the cases. An exception is made in the cases, when it appears that, without any view to peculiar qualities, there is a contract for slaves, to be sold again, as merchandize.
The same reason applies, and more strongly, in the case of a mortgagee of slaves. He is not supposed to know any thing of the peculiar qualities of the slaves, except that he might form an estimate of the market value of such slaves, and certainly not to have the same attachment, or knowledge of their character and qualifications, as the owner, who has been in possession of them, and has been deprived of it.— In this Court, the mortgagee, though having the legal title, is not considered, in any manner, as the owner of the slaves; as, in a Court of Equity in England, the mortgagee of land is not considered the owner. He is regarded as having taken a pledge or security for his debt, with-no view to the possession of the property itself. His object is merely the recovery of his money.
Nor do I think this can be regarded as a bill for the foreclosure of a mortgage. Certainly bills are entertained for the foreclosure of mortgages of personal property — somewhat unnecessarily, it might seem, as the mortgagee might seize the •property and sell it, to satisfy his debt. But the ground on which Equity entertains such a bill is, that the property may be sold under the direction of the court — that if it falls short of satisfying the debt, the mortgagee may have a decree for the residue, or, if there should be a surplus, that it may be *343 ■awarded to the mortgagor, and so put an end to litigation.— If the mortgagee should sell, himself, there would be, in case of deficiency, an action at law to recover the remainder of the debt; or, if there should be a surplus, the mortgagor -might, sue for it. Equity makes an end of these matters. But it tvas never supposed that the Court could be called upon to act the part of a bailiff, to put the property in the mortgagee’s possession, that he might sell it by his own act — still leaving the mutual rights of action, to which I have adverted. If this were a bill for a foreclosure of a mortgage, Loper would be a necessary party to it, as being the original debtor, liable in the first instance, against whom the complainants would be bound to exhaust their remedy, before proceeding against the property in the possession of his vendee. But the allegation of the bill is, that the negro has been- sold and carried out of the State; though, from subsequent evidence, it seems that this may not have been the case. A specific delivery, then, according to the shewing of the bill, would have been impracticable, whether for the purpose of making the sale to satisfy the mortgage debt, or otherwise. Then it is plain, that the only remedy was by an action of trover at law.— The sale, by one in possession of a chattel, is, of itself, a conversion, as against the true owner, without any demand on his part. This Court does not entertain an action of trover, though it may aAvard the value of property which has been destroyed or removed.
There is one ground, however, on which the complainants may, to a certain extent, be relieved; though the ground can hardly be said to be taken in the pleadings, unless under the prayer for general relief, nor even in the argument. I feel that there is some irregularity in the Court’s taking notice of a ground which has not been made or urged, yet it is within its competency to do so, and the Court is always unwilling to expose parties to protracted litigation, or see them defeated of a fair demand. If we should dismiss the bill,- the complainants’ action of trover would be barred by the Statute of Limitations. But there is a principle of Equity, that if a stranger, in possession of my property, undertakes to sell it, and delivers it accordingly, it is at my option either to pursue the property in the hands of the holder, or to affirm the sale, as the act of a voluntary agent, and recover the proceeds in his hands. This might be, where the sale was made in good faith, the vendor believing himself to be the owner. But in this case there is no doubt that the defendant had notice of the complainants’ claim, if not before, yet a feAv days after his purchase. He sold, as he expresses in his answer, “to *344 disconnect himself with the property.” This seems to have been under a notion, that by selling the slave he might rid himself of responsibility to the complainants. But this would not be so at law, 1101, on the principle I have stated, is it so in Equity.
It is ordered and decreed that the defendant, U. M. Robert, pay to the complainants the sum of four hundred dollars, with interest from the time of the sale to Powell, in September, 1842, as for money received to their use.
Johnston, Ch. and Caldwell, Ch. concurred.
Decree confirmed, in the result.